UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNDREA GORDON,<br><br>   Debtor/Appellant,<br><br>  v.<br><br>MARTHA G. BRONITSKY,<br><br>   Trustee/Appellee. | Case No. 21-cv-00643-WHO<br><br>**ORDER ON BANKRUPTCY APPEAL** |

This is an appeal from a bankruptcy court order denying confirmation of appellant Sundrea Gordon's chapter 13 plan, which allegedly contained a provision that did not comply with this District's bankruptcy General Order 34, and an appeal from the court's subsequent order granting confirmation of her plan once she corrected that provision. General Order 34 requires debtors to submit quarterly declarations and documentary proof of making direct (non-conduit) payments in accordance with their plans. Appellee, the chapter 13 Trustee, claims that the bankruptcy court correctly upheld the validity of the reporting requirements imposed by General Order 34.

General Order 34 provides a procedural process for enforcing rights and obligations and does "not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075. It is consistent with Federal Rule of Bankruptcy Procedure 9029. The reporting requirement serves an important purpose of allowing Trustee, and the court, to monitor a debtor's compliance with her confirmed plan and ensures that debtors who choose to use non-conduit plans are accorded the same treatment as debtors who use the standard conduit plans. The bankruptcy court's decisions are AFFIRMED.[1]

---

[1] Oral argument is unnecessary pursuant to Federal Rule of Bankruptcy 8019(b)(3).

**BACKGROUND**

On February 21, 2020, Gordon filed for chapter 13 bankruptcy with the United States Bankruptcy Court for the Northern District of California. Appellant's Excerpts of Record ("ER") [Dkt. Nos. 9-1 to 9-3] 1, 53. On May 28, 2020, Gordon filed a First Amended Chapter 13 Plan using the mandatory District Model Chapter 13 Plan form. *Id.* at 96. At the time, Gordon was behind on her mortgage payment by $5,039.16. *Id.* at 98. She proposed to pay monthly mortgage payments of $1,476.55 over the first ten months of her plan. *Id.*

Her First Amended Plan included the language of General Order 34 as an additional provision in Section 7.01(c) of the plan, which provides for the debtor to submit to the court quarterly declarations of proof of direct payments to his or her creditors. *Id.* at 102. The language of General Order 34 provides in relevant part:

> Debtor shall file with the bankruptcy court a declaration signed under penalty of perjury stating that debtor has made the post-petition payments debtor proposed to be made directly to each applicable named Class 1 Creditor, and attach to each declaration proper documentary evidence of the payments made (the "Declaration"). **Prior to confirmation** of the plan, such Declaration(s) shall be filed five days before the original and all continued meetings of creditors and any contested confirmation hearings, or continued contested confirmation hearings. The bankruptcy court will not confirm a Chapter 13 plan (and may dismiss the Chapter 13 case) if the Debtor is not current on these post-petition/pre-confirmation payments. **Post confirmation** of each year the plan is pending, such Declarations shall be filed on a quarterly basis no later than January 20, April 20, July 20, and October 20 . . . The bankruptcy court may dismiss the Chapter 13 case if the Debtor is not current on these post-confirmation payments.

ER 358–59 (emphasis in original); *see* https://www.canb.uscourts.gov/order/general-order-34-chapter-13-debt-adjustment-cases. Section 7.01(c) of the First Amended Plan largely followed this language.[2]

---

[2] *See* ER 102 ("Section 3.07(b) is replaced with the following provision: (a) Debtor shall make the post-petition payments directly to [Class 1 creditor] in accordance with the applicable terms of the underlying promissory note or other obligation; (b) The Chapter 13 Trustee shall not make any such post-petition monthly payments under § 5.02 of the Plan to the above named secured creditors; [and] (c) After the Plan is confirmed, Debtor shall file with the bankruptcy court quarterly declarations under penalty of perjury stating that Debtor has made her post-petition payments to [Class 1 creditor], and attach to each declaration proper documentary evidence of the payment(s) made. The quarterly declarations for January–March payments shall be filed by April 20th, the quarterly declarations for April–June payments shall be filed by July 20th, the quarterly

In addition to the General Order 34 language, Section 7.01(c) of the First Amended Plan included the self-executing sentence, "These non-conduit declarations shall no longer be required after November 2020 when payment of the pre-petition arrears is complete." ER 102. Gordon included this self-executing language because she expected the mortgage arrears portion of her debt would be paid off within the first ten months of her full five-year plan. *Id.* at 167. She claimed that automatically eliminating the reporting requirement once her arrears were fully paid would allow her to avoid $900 in fees of asking the court to "modify" the plan to remove the reporting requirement. *Id.* at 125.

On July 13, 2020, the Trustee filed an Objection to Confirmation of Chapter 13 Plan and Motion to Dismiss or Convert Case to Chapter 13 on the grounds that Gordon's First Amended Plan was not feasible under 11 U.S.C. § 1325(a)(6). *Id.* at 115. The Trustee's objection asserted, "The Debtor is attempting to prospectively eliminate the reporting requirements for on-going mor[t]gage payments, without filing a mo[tio]n to modify plan . . . The Trustee, as well as creditors, have a right to know if the Debtor fulfills her obligations to make her plan payments and her on-going mortgage payments before agreeing to eliminate the reporting requirements." *Id.*

On July 28, 2020, Judge Charles Novack of the United States Bankruptcy for the Northern District of California conducted a confirmation hearing on Gordon's First Amended Chapter 13 Plan. *Id.* at 164. Judge Novack requested additional briefing on whether General Order 34 was required for confirmation of a chapter 13 plan and whether General Order 34 required the debtor to submit declarations for the full duration of the plan. *Id.* at 166.

On September 17, 2020, Judge Novack issued an Order Tentatively Denying Confirmation of First Amended Chapter 13 Plan and Setting a Further Hearing. *Id.* at 225. He subsequently held a second confirmation hearing on Gordon's First Amended Chapter 13 Plan. *Id.* at 238. On November 12, 2020, the he adopted his tentative ruling in the Order Denying Confirmation of First Amended Chapter 13 Plan. *Id.* at 251.

Judge Novack found that the reporting requirements of General Order 34 are a necessary

---

declarations for July–September payments shall be filed by October 20th, and the quarterly declarations for October–December shall be filed by the following January 20th.").

3

1  solution given a trustee's difficulty of monitoring the debtor's performance under his or her direct
2  payment obligations, *i.e.*, payments that do not go through the trustee's hands. *Id.* at 253–54
3  (citing *In re Lopez*, 372 B.R. 40, 55 (B.A.P. 9th Cir. 2007), *opinion adopted,* 550 F.3d 1202 (9th
4  Cir. 2008) (finding this concern "could be alleviated through a requirement by the trustee (either in
5  the plan or by incorporation in the local plan guidelines) that the debtor send proof of direct
6  payment regularly to the trustee," which in turn "would allow the trustee to accurately monitor the
7  debtor's performance as well as provide the trustee with data from which to fashion an accurate
8  and complete final account")). Judge Novack explained that "General Order 34 allows the
9  Chapter 13 trustee and debtor to address plan defaults while the plan can still be modified." *Id.*
10 He emphasized that General Order 34 was "strictly procedural," and accordingly did not violate
11 the Rules Enabling Act, 28 U.S.C. § 2075. *Id.* at 255.

12 Judge Novack also found Gordon's reliance on the Ninth Circuit's ruling in *In re Sisk*, 962
13 F.3d 1133 (9th Cir. 2020) unavailing. *Id.* at 256. He reasoned: "The *Sisk* court plumbed the
14 depths of Chapter 13 to determine the *substantive* terms of a Chapter 13 plan. General Order 34
15 does not limit what a debtor may propose in her Chapter 13 plan. Instead, orders such as General
16 Order 34 are administrative in nature, which the *Sisk* court itself tacitly acknowledges." *Id.*
17 (emphasis in original). Finally, he "acknowledge[d] that there is a cost to complying with General
18 Order 34" and "urge[d] the bar to take reasonable steps to minimize the attorneys fees associated
19 with compliance." *Id.* at 257. Nevertheless, he found that Gordon's counsel's declaration
20 "overstates this cost, and thus adds little to her argument." *Id.* For all those reasons, he denied
21 confirmation of Gordon's First Amended Chapter 13 Plan.

22 In accordance with the Judge Novack's ruling, on November 20, 2020, Gordon filed a
23 Second Amended Chapter 13 Plan that removed the disputed self-executing language and
24 provided for reporting under General Order 34 for the full duration of her plan. *Id.* at 266, 272. In
25 the six months leading up to confirmation of her chapter 13 plan, Gordon filed six separate
26 declarations with the court affirming that she was current on her direct payments to her Class 1
27 creditor. Appellant's Opening Brief ("Opening Br.") [Dkt. No. 11] 6.
28 On January 12, 2021, Judge Novack confirmed Gordon's Second Amended Chapter 13

1  Plan. ER 339. On January 20, 2021, Gordon timely appealed both of Judge Novack's orders, the
2  Order Denying Confirmation of First Amended Plan and the Order Confirming a Second
3  Amended Plan. *Id.* at 341. In this appeal, she seeks to have this court find that General Order 34
4  reporting cannot be required for confirmation of a chapter 13 Plan. Opening Br. 6.

**LEGAL STANDARD**

A district court reviews a bankruptcy court's decision under the same standard of review circuit courts use in reviewing district court decisions: "[f]actual determinations are reviewed under the clearly erroneous standard, while determinations of law are reviewed de novo." *Andrews v. Loheit*, 155 B.R. 769, 770 (B.A.P. 9th Cir.1993) (citing *In re Warren,* 89 B.R. 87, 90 (B.A.P. 9th Cir.1988)); *Ford v. Baroff*, 105 F.3d 439, 441 (9th Cir. 1997). The confirmation of a Chapter 13 plan involves mixed questions of fact and law. *Andrews*, 155 B.R. at 770.

The validity of a local court rule is a question of law reviewed *de novo*. *Pham v. Golden (In re Pham)*, 536 B.R. 424, 430 (9th Cir. BAP 2015); *Jones v. Hill (In re Hill)*, 811 F.2d 484, 485-86 (9th Cir. 1987); *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir. 1984) (en banc), *cert. denied,* 469 U.S. 824 (1984). The trial court's application of a local rule is reviewed for an abuse of discretion. *Hinton v. Pac. Enter.*, 5 F.3d 391, 395 (9th Cir. 1993), *cert. denied,* 511 U.S. 1083 (1994).

**DISCUSSION**

**I.  BACKGROUND OF GENERAL ORDER 34**

General Order 34 imposes a periodic reporting requirement on chapter 13 debtors. Under the requirement, chapter 13 debtors must submit quarterly declarations that they are current on their post-petition payments for the duration of the plan. General Order 34's reporting requirement applies to plan provisions in which the debtor has opted out of the default conduit plan and instead has elected to make payments directly to the Class 1 creditor under the approved non-standard Non-Conduit payment provision of Section 7 of the district form. *See* ER 102.

The District Model Chapter 13 Plan form by default incorporates a conduit plan for all Class 1 claims: "From plan payments received, Trustee shall make all post-petition payments to the holder of each Class 1 claim . . ." *Id.* at 97. Conduit plans prescribe for the debtor's post-

petition payments to be included in the monthly plan payments to the trustee, from which the trustee will distribute the appropriate amounts to the secured creditors. Appellee's Supplemental Excerpts of Record ("Supp. ER") [Dkt. No. 11-2] 3. Non-conduit plans, on the other hand, allow a debtor to make his or her monthly payments directly to the secured creditor. *Id.* at 7. The bankruptcy court permits a chapter 13 debtor to arrange for non-conduit payments on any "pre-petition arrears on debt secured by real property." *Id.* Because direct payments bypass the trustee's custody of the debtor's funds, neither the trustee nor the court is able to assess whether the debtor is fulfilling his or her direct payment obligations unless the debtor provides proof by declaration. Consequently, General Order 34's reporting requirement serves to keep all interested parties informed of the chapter 13 debtor's likelihood of meeting his or her obligations under the plan.

## II. *SISK* IS NOT APPLICABLE

As an initial matter, the parties dispute what this appeal is about and which legal standard should apply. Gordon argues that her direct payments are outside the plan, Opening Br. 3, and that General Order 34's reporting requirements impermissibly exceed the duties imposed on chapter 13 debtors under the federal Bankruptcy Code ("the Code"), *id*. at 7. She relies on *In re Sisk*, 962 F.3d 1133 (9th Cir. 2020), for the proposition that the court may not impose any requirement that is "different, more burdensome" than those under the Code. *Id.* at 8. The Trustee asserts that Gordon's direct payments to the Class 1 creditor fall under the scope of the chapter 13 plan, rendering the payments subject to General Order 34 reporting requirements. Appellee's Opposing Brief ("Oppo. Br.") [Dkt. No. 11] 12. The Trustee contends that the legal standard for determining the validity of General Order 34 is in the Rules Enabling Act, 28 U.S.C. § 2075, and Federal Rule of Bankruptcy Procedure ("FRBP") 9029(b). Oppo. 9–10.

For the reasons explained below, I agree with the Trustee that the Rules Enabling Act and the FRBP set the controlling legal standard for determining the validity of General Order 34's reporting requirement. *Sisk* involved a different issue: "whether a bankruptcy plan must include a fixed—rather than estimated—duration when no party objects to the plan's confirmation." *Sisk*, 962 F.3d at 1145. The debtor in that case submitted a plan proposal with an estimated plan

6

duration, but the bankruptcy court denied confirmation on grounds that "plans with no specific duration were impermissibly 'self-modifying,' in violation of [sections] 1328(a) and 1329(b)." *Id.* at 1140. The Ninth Circuit reversed, finding that although the Code expressly provided a minimum duration for objected-to plans and a maximum duration for all plans, the Code did not expressly prohibit confirmation of plans with estimated durations that drew no objection. *Id.* at 1145–46. In validating the estimated duration provision in the debtor's plan proposal, the Ninth Circuit explained that "[b]ecause the text and structure of the Code do not mandate a fixed term requirement for all Chapter 13 plans, we should not add one without clear direction from the statute." *Id.* at 1148.

The *Sisk* court raised the "different, more burdensome" standard in the context of *In re Anderson*, 21 F.3d 355 (9th Cir. 1994), in which the Ninth Circuit rejected the trustee's proposed requirement that the debtors pay their "actual" instead of "projected" disposable income. *Sisk*, 962 F.3d at 1148. Both the *Sisk* and *Anderson* courts applied the "different, more burdensome" standard to strike down provisions that *substantively* altered the debtor's payment obligations. The Ninth Circuit did not apply the standard to assess the validity of procedural requirements under local rules.

Gordon applies the ruling in *Sisk* here to conclude that General Order 34 is invalid solely because it requires an additional duty not found expressly in the Code. Opening Br. 8. But as a different bankruptcy judge in this District recently held in applying FRBP 9029(b) and upholding the validity of General Order 34, "GO 34's reporting requirement *does not abridge or modify a debtor's substantive rights*" *In re Powell*, No. 18-50818 SLJ, 2020 WL 751982, at *10 (Bankr. N.D. Cal. Jan. 23, 2020) (emphasis added).[3] The court aptly explains that "[t]he important point is that GO 34 does not require a debtor to maintain postpetition direct payments. [11 U.S.C. §]

---

[3] Unlike Gordon's argument, which depends almost exclusively on *Sisk*, the debtor in *Powell* sought modification of his plan and challenged General Order 34 on the two false assertions that (i) the court should have enacted the reporting requirement as an amendment to the local rules instead of issuing a general order and (ii) neither trustee nor the court had the authority to monitor and enforce the debtor's obligation to make direct payments. *See Powell*, 2020 WL 751982, at *6–8. Although the arguments here differ somewhat from those raised in *Powell*, I ultimately reach the same conclusion—the reporting requirements imposed by General Order 34 is lawful.

7

1322(b)(5) does. GO 34 merely requires a debtor to show that he is satisfying his statutory obligation." *Id.* General Order 34 does not impose an additional duty; it merely adds a *procedure* (the reporting requirement) to ensure that a statutory duty is met. Gordon cites no case that has applied *Sisk* in the way she is trying to apply it here, to bar additional *procedural* burdens beyond the Code.

Judge Novack correctly indicated in his underlying Order Denying Confirmation of First Amended Chapter 13 Plan that "General Order 34 does not limit what a debtor may propose in her Chapter 13 plan. Instead, orders such as General Order 34 are administrative in nature . . . ." ER 256. Gordon argues that General Order 34's reporting requirement restricts her rights and increases the cost of chapter 13 bankruptcy relief. Opening Br. 11. Requiring Gordon to report that her payments are complete does not demand that Gordon change any substantive terms of her proposed plan, such as the amount or frequency of payments at issue in *Anderson*, the duration of plan at issue in *Sisk*, or any other general qualifications for discharge.

Moreover, unlike the proposed modifications in *Sisk* and *Anderson*, failure to comply with General Order 34's reporting requirements does not create an independent basis for dismissal. Instead, General Order 34 provides that "[t]he bankruptcy court may dismiss the Chapter 13 case if the Debtor is not current on these post-confirmation payments," which means that a case may be dismissed for failure to make payments, not necessarily for failure to report. ER 359; *see Powell*, 2020 WL 751982, at *10 (finding "GO 34 does not create an independent basis for dismissal, rather "the cause for dismissal is the failure to comply with [section] 1322(b)(5), which constitutes a material default of the confirmed plan under [section] 1307(c)(6)") (citing *In re Mrdutt*, 600 B.R. 72, 81 (B.A.P. 9th Cir. 2019)).[4]

In sum, Gordon's reliance on *Sisk* is misplaced. Because the reporting requirement she

---

[4] Although Gordon raises *In re Jorgensen* (BK No. 18-42571 RLE 13), ER 373–77, as an example of a dismissal premised on the debtor's failure to submit quarterly declarations in compliance with General Order 34, it appears that the underlying reasoning for that dismissal was because the debtor failed to make payment pursuant to the plan. *See* Opening Br. 21. Even if that is not the case, this singular contradictory example does not undermine the overall conclusion that General Order 34 is lawful.

1  challenges in General Order 34 is procedural in nature, I look to the standard set out in FRBP 9029
2  and the Rules Enabling Act to determine its validity.

**III.  VALIDITY OF GENERAL ORDER 34**

FRBP 9029(b) permits the bankruptcy court to "regulate practice in any manner consistent with federal law, these rules, Official Forms, and local rules of the district." Fed. R. Bankr. P. 9029(b). The 1995 Advisory Committee Notes grant the validity of general orders, acknowledging that courts may use "internal operating procedures, standing orders, and other internal directives" to control practice. Additionally, the Advisory Committee Notes explain that "[t]his rule provides flexibility to the court in regulating practice when there is no controlling law." Fed. R. Bankr. P. 9029 Advisory Committee Notes 1995.

The Rules Enabling Act, 28 U.S.C. § 2075, provides, "The Supreme Court shall have the power to prescribe by general rules . . . the practice and procedure in cases under title 11. Such rules shall not abridge, enlarge, or modify any substantive right." Therefore, the bankruptcy court has the authority to implement procedural rules and general orders as long as those rules are "consistent with—but not duplicative of—Acts of Congress[.]" Fed. R. Bankr. P. 9029(a)(1). Here, Gordon argues that General Order 34 is inconsistent with both 11 U.S.C. § 1325(a) and 11 U.S.C. § 521. Opening Br. 10, 27. Both arguments fail.

**A.  General Order 34 Is Not Inconsistent with 11 U.S.C. § 1325(a)**

Section 1325(a) sets forth the requirements for confirmation of a chapter 13 plan. If the chapter 13 debtor satisfies each of the statutory requirements and the plan draws no objection, the court is required to confirm the plan. 11 U.S.C. § 1325(a). Gordon argues that General Order 34's reporting requirement is incompatible with section 1325(a) because the statute does not require reporting as a prerequisite to confirmation. Opening Br. 10.

Section 1325(a)(6) requires that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). Under conduit plans, all plan payments pass through the trustee's hands, allowing the trustee to contemporaneously assess the debtor's ability to fulfill his or her obligations under the plan. In non-conduit plans, the trustee lacks any guarantee that the debtor is making direct payments to his or her creditor(s) unless the

9

debtor communicates such information to the trustee. Rather than being inconsistent with the statutory requirements for confirmation, General Order 34's reporting requirement simply provides the assurance of feasibility that is required under Section 1325(a)(6). *See Powell*, 2020 WL 751982, at *6 ("GO 34 only seeks written confirmation of what the Bankruptcy Code requires—payments to secured creditors in accordance with the terms of the plan a debtor has chosen to prepare and confirm"); *In re Mrdutt*, 600 B.R. at 81 (B.A.P. 9th Cir. 2019) (finding direct payments to creditors under a non-conduit provision are still considered "payments under the plan," even though such payments do not directly pass through the trustee's hands," and that "the promise to maintain postpetition payments to a mortgage creditor is a mandatory element of the treatment of claims subject to [section] 1322(b)(5), and it is not severable").

### B. General Order 34 is Not Inconsistent with 11 U.S.C. § 521

Section 521 specifies a list of the debtor's duties. *See* 11 U.S.C. § 521. In contesting the validity of General Order 34's reporting requirement, Gordon argues that the provisions of section 521 are the exclusive means by which a debtor is obligated to report information to the trustee. Opening Br. 27. Gordon asserts that section 521 precludes additional requirements, derivatively claiming that General Order 34's reporting requirement is inconsistent with section 521. *Id.* at 28.

The Ninth Circuit faced a similar argument in *Reichard v. Brown*, 829 F. App'x 812 (9th Cir. 2020), *cert. denied,* No. 20-1075, 2021 WL 1520806 (U.S. Apr. 19, 2021). There, the debtors challenged the validity of a local rule that required the debtors to provide their tax returns to the trustee on the grounds that the local rule "is not consistent with [section] 521, which allows a trustee to obtain a debtor's tax returns from the court but imposes procedures for the protection of return information." *Id.* at 813. The Ninth Circuit rejected the argument because "[section] 521 is not the exclusive means by which a trustee can gain access to a debtor's tax returns." *Id.* (citing Fed. R. Bankr. P. 2004 and 7034). "[B]ecause [section] 521 is not the only method for a trustee to obtain a debtor's tax returns," it concluded that the challenged local rule was "not incompatible with [section] 521 simply because it provides another method for a trustee to obtain this information," and thus "not inconsistent with [section] 521 such that it violates Rule 9029(a)(1)." *Id.*

10

Here, Gordon contends that section 521, specifically subsection(f)(4), expressly limits the chapter 13 trustee's right to request the debtor's financial information to a specific timeframe. Opening Br. 28. However, the FRBP present alternative channels for exercising the right to obtain the debtor's financial information. *See* Fed. R. Bankr. P. 2004 (provides for examination of matters related to debtor's plan); Fed. R. Bankr. P. 3002.1(g) (provides for statement of final payment and that debtor is current on all payments); Fed. R. Bankr. P. 7034 (applies to adversary proceedings). As with *Reichard*, section 521 is not the exhaustive means by which a trustee may receive information about the debtor's financial activity. Because General Order 34's reporting requirement is a compatible alternative to section 521, General Order 34 is not inconsistent with section 521.

Gordon attempts to distinguish *Reichard* on grounds that the debtors in *Reichard* already had a duty to provide their tax returns and that the local rule in Reichard simply "makes everyone's job easier by making [the provision of information] automatic, rather than a matter of yearly requests by the trustee." Appellant's Reply Brief [Dkt. No. 12] 14–15. Gordon further asserts that under that local rule, "[d]ebtors in *Reichard* were not required to do anything they were not already obligated to do, and the cost of submitting tax returns once a year is minimal." *Id.* at 15. Gordon contrasts the facts in *Reichard* with the conclusory argument that the General Order 34 requirements are "entirely incompatible with [section] 521." *Id.* at 15.

Gordon's summary of *Reichard* only highlights the resemblance between her case and the facts in *Reichard*. General Order 34 merely ensures that a chapter 13 debtor will provide a trustee of a non-conduit plan the assurance that the debtor is fulfilling his or her direct payments to Class 1 creditors, eliminating the uncertainty accorded with informal, irregular requests. Like the *Reichard* debtors' already-existing obligation to provide their tax returns, General Order 34 demands only regular proof that the debtor has complied with the obligations under her non-conduit plan, information that would already be a final requirement for the debtor's discharge.

Moreover, although Gordon may bear additional costs for submitting quarterly declarations, I agree with Judge Novack that Gordon's counsel exaggerates the reasonable costs associated with preparing a declaration consisting of five sentences (the content of which barely

11

changes across declarations) and three screenshots of bank statements. ER 257–58. As Judge Novack reasoned in the underlying Order Tentatively Denying Confirmation of First Amended Chapter 13 Plan, "the attorney's fees incurred in complying with General Order 34 may well be less than the cost of the alternative – the Chapter 13 trustee's fees under a conduit plan." ER 230–31.

Other jurisdictions have held that local rules that impose requirements not found in the Bankruptcy Code are not de facto inconsistent with the Code. For instance, the Eighth Circuit in *In re Reed*, 943 F.3d 849, 852 (8th Cir. 2019) found that a local rule requiring a separate notice of appeal and separate payment for each order being appealed was not inconsistent with the FRBP, which neglected to address whether a party had the right to appeal multiple orders by filing a single notice of appeal. As another example, the court in *In re Walat*, 87 B.R. 408, 412 (Bankr. E.D. Va.), *aff'd,* 89 B.R. 11 (E.D. Va. 1988) upheld a local rule that required chapter 13 plans to correspond to the form approved by the court and provided for a confirmation hearing only if the party timely filed an objection, finding that the rule did "not affect any parties' substantive rights . . . but merely dictate[d] the procedure by which the bankruptcy court will consider the contents and confirmation of a debtor's chapter 13 plan." By contrast, the Third Circuit in *In re Kool, Mann, Coffee & Co.*, 23 F.3d 66, 68 (3d Cir. 1994) invalidated a local bankruptcy rule that forwarded appeals to the Court of Appeals, establishing that the local rule conflicted with a statute requiring that appeals be directed to the district court or the Bankruptcy Appellate Panel. Like the valid local rules in *Reed* and *Walat*, General Order 34 dictates procedure only; the reporting requirement does not affect any substantive condition of confirmation of a debtor's chapter 13 plan. Unlike the dispute in *Kool* that rendered impossible the compliance with both the local rule and the statute, General Order 34's reporting requirement does not preclude a chapter 13 debtor from simultaneously adhering to both section 521 and General Order 34.

### IV. POLICY REASONS FOR UPHOLDING GENERAL ORDER 34

Judge Novack appropriately noted that General Order 34 serves the important policy purposes of informing the trustee of the debtor's performance and allowing the trustee and debtor to address any defaults while the plan can still be modified. ER 253–254. Under the Bankruptcy

12

Code, a chapter 13 trustee has a duty to monitor performance under the plan. See 11 U.S.C. §§ 1302(b)(1), 1307(c); *In re Lopez*, 372 B.R. at 54; *In re Giesbrecht*, 429 B.R. 682, 690 (B.A.P. 9th Cir. 2010). As recognized by the Ninth Circuit, "[b]y not submitting ongoing maintenance payments to the trustee, the trustee is unable to easily monitor and ensure that the debtor is making regular payments to those creditors." *Lopez*, 372 B.R. at 54–55. Accordingly, the purpose of General Order 34 is to "provide[] a means for trustee to discharge her duty to monitor a debtor's compliance with his direct payment obligations . . . Without a mechanism to monitor a debtor's direct payments during the term of the plan, a debtor's postpetition mortgage arrears may be too large to remedy at the conclusion of the plan, thereby jeopardizing his discharge." *Powell*, 2020 WL 751982, at *10.

The trustee's oversight role also protects debtors by ensuring that debtors maintain their eligibility for discharge before it is too late to implement modifications. *See id.* ("Without a mechanism to monitor a debtor's direct payments during the term of the plan, a debtor's postpetition mortgage arrears may be too large to remedy at the conclusion of the plan, thereby jeopardizing his discharge."); *see also In re Bauman*, No. 3:17-BK-06250, 2020 WL 1899557, at *9 (B.A.P. 9th Cir. Apr. 16, 2020) (declining confirmation of the debtor's proposal to disburse all plan payments directly, essentially writing the trustee out of her plan, because the debtor "may not usurp the chapter 13 trustee's statutory role," which includes "ensur[ing] that the debtor commences making timely payments under section 1326[(b)(5)]"; "[p]ermitting a debtor to make all chapter 13 payments outside of the plan would undermine the trustee's ability to carry out these duties or render them impracticable"). General Order 34 serves as a useful, preventative insurance policy that debtors and trustees perform their obligations properly. The reporting requirement allows the trustee to address any issues before it is too late for the debtor to be eligible for discharge. The mishap that occurred in the beginning of Gordon's bankruptcy case highlights why General Order 34's reporting requirement is important.[5]

---

[5] Although Gordon intended to pay her mortgage arrears directly to her Class 1 Creditor, ER 120, Gordon's first chapter 13 plan (filed prior to Gordon's First Amended Plan) failed to include a non-standard provision indicating the non-conduit payments, *id.* at 53–59. Accordingly, the Trustee assumed the default trustee role of disbursing two monthly mortgage payments to

13

Lastly, the reporting requirement ensures that debtors who choose to use non-conduit plans are accorded the same treatment as debtors who use the standard conduit plans. *Powell*, 2020 WL 751982, at *10. Although a debtor has the unequivocal right to make direct payments under a Chapter 13 plan, *see Lopez*, 372 B.R. at 52, the "option to pay a creditor directly is not the same thing as the right to pay sporadically," *Powell*, 2020 WL 751982, at *8. If General Order 34's reporting requirement were not mandatory for direct payments, a trustee under a non-conduit plan might be unaware of a debtor's failure to satisfy the direct payment obligations, whereas a trustee under a conduit plan would immediately know because of the debtor's failure to pay the trustee. Whether the debtor is entitled to discharge should not depend upon whether the debtor operates under a conduit payment plan. *Powell*, 2020 WL 751982, at *10.

## V. ARGUMENT REGARDING TEN-MONTH EXEMPTION IS NOT PERSUASIVE

Gordon argues that enforcement of General Order 34's reporting requirement should allow an exemption once debtors have fully paid their arrears under the plan. Opening Br. 29. Under Gordon's proposed plan, Gordon expects to satisfy her direct payments to her Class 1 creditor within the first ten months of her full five-year plan. ER 102. Gordon argues that the obligation under General Order 34 to file quarterly reports for the remaining months of her Chapter 13 plan would be impermissibly burdensome. Opening Br. 29. As Judge Novak explained, "Although Gordon only seeks limited relief from General Order 34, her arguments apply writ large to the legality of General Order 34." ER 228 n.4. Because General Order 34's reporting requirement

---

Gordon's Class 1 creditor, while Gordon simultaneously made two direct non-conduit mortgage payments to the same creditor. *Id.* at 121. "This error went unnoticed for several months by both Debtor's counsel and the Trustee's office." *Id.*

Because of the missing non-conduit language in Gordon's initial plan proposal, the mix-up prompted the trustee and debtor to re-allocate the two months of redundant funds to the arrears instead of the post-petition installments. *Id.* The confusion compounded in June and July of 2020 when Gordon attempted to make her direct payments, but the Class 1 creditor mistakenly informed Gordon that she did not owe any monthly payment and that she was prepaid up to two months. *Id.* at 123. After clarification, Gordon made the payments for June and July of 2020 again, resulting in an extra declaration. *See id.* at 135–137, 235–237.

Thus, unless the debtor submits declarations of direct payments to the trustee, the trustee has no assurance that payments are being made, or in this case, that redundant payments are not being made. The reporting requirement serves an important means of communication between the trustee and debtor to address any plan defects while there is still time to amend.

serves to keep all interested parties informed of a debtor's continuing ability to satisfy his or her proposed obligations, Gordon's challenge of General Order 34 fails.

## CONCLUSION

The bankruptcy court's Order Denying Confirmation of First Amended Chapter 13 Plan and Order Confirming Second Amended Chapter 13 Plan are AFFIRMED.

**IT IS SO ORDERED.**

Dated: July 15, 2021



William H. Orrick
United States District Judge